**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frankie Tyree, | No. CV-24-01758-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Bray International Incorporated, | |
| Defendant. | |

Before the Court is Defendant Bray International Incorporated's Motion for Summary Judgment, (Doc. 52), accompanied by Defendant's Statement of Facts (SOF, Doc. 53). Plaintiff Frankie Tyree filed a Response, (Doc. 60), and a Controverting Statement of Facts, (CSOF, Doc. 59). Defendant filed a Reply. (Doc. 64.) Defendant's Motion will be decided without oral argument. *See* LRCiv 7.2(f).

For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

## I.     BACKGROUND

All facts set forth below are undisputed or not subject to reasonable dispute based on proffered admissible evidence unless otherwise noted.

Plaintiff is a female resident of Mesa, Arizona, who is over 40 years old. Defendant Bray International, Inc. is a global manufacturer of valves and actuators. In July 2006, Defendant hired Plaintiff as an Outside Sales Representative, with the responsibility to manage customer accounts, including providing product quotes and pricing sheets for

clients. She was also required to travel to customer sites throughout Arizona, for which she received a transportation budget for her expenses.

In or around January 2022, Plaintiff's male supervisor Shannon Webster began receiving multiple customer complaints about Plaintiff[1] regarding her alleged unresponsiveness to client emails and failure to provide pricing information in a timely manner.[2] On May 18, 2022, Webster received another client complaint regarding Plaintiff's unresponsiveness.[3] In late August or early September 2022, another client, Omya, contacted Nick Smith, Defendant's Vice President of Sales North America ("VP Smith"), to complain that Plaintiff was not responsive and had not provided requested pricing information.[4]

In a conversation with Webster in September 2022, Plaintiff explained she had been experiencing stress due to the loss of her home. In December 2021, Plaintiff's home went into foreclosure and was sold, but Plaintiff refused to vacate the property, alleging that the debt underlying the foreclosure was fraudulent and denying that she had executed the notarized deed of trust securing the debt. On March 9, 2022, Plaintiff was evicted from her home; her request to set aside the eviction on May 9, 2022, was denied.

On September 14, 2022, in response to the client complaints, and as a condition of her continued employment, Defendant required Plaintiff to enter into a Performance Improvement Agreement ("Agreement"). The Agreement required Plaintiff to fulfill seven requirements, including successfully completing the treatment prescribed by the Employee Assistance Program ("EAP") provider and obtaining financial counseling. It stipulated that

---

[1] Although Plaintiff denies this statement, the substance of her denial is only that she had never been notified of, or disciplined for, any deficiency in her work performance prior to September 14, 2022. (CSOF ¶ 4.)

[2] Plaintiff denies this, but the substance of her denial is only that these delays were because she had to produce her own price quotes and pricing sheets, for which she depended on "inside sales to provide her price data" after the data was approved by Webster. (CSOF ¶¶ 5–11.)

[3] Plaintiff denies this, but the substance of her denial is only that if Webster actually received it, "he failed to either document it or address it with Ms. Tyree." (CSOF ¶ 12.)

[4] Plaintiff argues the customer complaint received by Nick Smith is inadmissible hearsay. But Defendant asserts, and the Court agrees, that this complaint is not being offered to show Plaintiff in fact was not responsive, but that Defendant had a reasonable basis to believe Plaintiff's work performance was deficient and to take steps to address it. (Doc. 64 at 7 n.1.)

failure to complete all seven requirements would result in Plaintiff's termination. Defendant thereafter placed Plaintiff on a three-week leave of absence through October 5, 2022, to "get [her] affairs in order," but the Agreement did not expressly state that Plaintiff needed to complete the EAP treatment or obtain financial counseling by a certain date.[5]

Under the Agreement, Defendant's third-party EAP provider, Health Advocate Solutions, Inc. ("Health Advocate"), was responsible for prescribing and overseeing Plaintiff's treatment without oversight by Defendant. Health Advocate's prescribed treatment plan required Plaintiff to complete at least two counseling sessions with a mental health counselor.[6] Plaintiff completed her first mental health counseling session on September 27, 2022. Due to issues with Plaintiff's initial healthcare counselor, Health Advocate informed Defendant on October 4, 2022, that it had instructed Plaintiff to contact Health Advocate again on October 5, 2022, to obtain a new mental health counselor, as well as a financial counselor. Plaintiff completed a counseling session with a new mental health counselor on October 6, 2022. Defendant informed Plaintiff she had until October 14, 2022, to complete a second session with the new mental health counselor. Plaintiff advised Defendant on October 14 that she had not yet completed a second session with the new counselor, informing Defendant the counselor would not be able to see Plaintiff until October 17, 2022.

Regarding her financial counseling, Plaintiff alleges she "contacted two or three financial advisors that were referred to her by the EAP program, but they only offered to help her file for bankruptcy, which was not an option because she did not have enough debt to qualify." (CSOF ¶ 44.) A case note from Health Advocate dated October 5, 2022, states that Plaintiff had been referred to MSA Financial for financial counseling but "they transferred [Plaintiff] back to EAP because it was determined that it was a legal issue, no [sic] financial—once a home is lost there is nothing financial can do" and it "needs to go

---

[5] Defendant asserts the Agreement expressly required Plaintiff to complete the seven tasks by October 5, 2022. (SOF ¶ 31.) This interpretation is debatable, as discussed *infra*.
[6] The parties dispute whether the EAP treatment plan required Plaintiff to complete two counseling sessions with the same mental health counselor. The actual text of the treatment plan has not been proffered by either party.

to legal." (Doc. 65-13 at 2.)

On October 14, 2022, Whitney Stephenson, Defendant's Human Resources Business Partner and Defendant's point-of-contact with Health Advocate, decided Plaintiff failed to complete her prescribed EAP treatment plan and obtain financial counseling pursuant to the Agreement. Furthermore, Stephenson opined that Plaintiff would likely not complete the long-term requirements under the Agreement, such as maintaining regular attendance, performing job duties in a satisfactory manner, and not missing client appointments. Following a discussion between Stephenson, VP Smith, and Michelle Howison, Defendant's Global Director Vice President of Human Resources, it was agreed Plaintiff should be terminated. Later on October 14, 2022, Stephenson emailed a termination letter to Plaintiff, which was effective immediately "due to failure to comply with the signed EAP agreement."[7] (Doc. 65-8 at 2.)

Following her termination in October 2022, Plaintiff was employed by Palo Verde Industrial Supply from February 6, 2023, until May 2024. Plaintiff has not applied for other jobs since May 2024.[8]

On April 16, 2023, Plaintiff submitted an intake questionnaire with the EEOC recounting the events surrounding the Agreement, her placement on the EAP, and her subsequent termination. The first two sentences of the allegations in her questionnaire were as follows: "I was continuously harassed and discriminated against due to my gender in a male dominated industry. However, the most recent act against me began on 9/14/2022."

On May 26, 2023, Plaintiff dual-filed with the EEOC and Civil Rights Division of the Arizona Attorney General's Office her formal Charge of Discrimination ("EEOC Charge") against Defendant. Plaintiff's EEOC Charge exclusively focused on the events beginning on September 14, 2022, surrounding Plaintiff's EAP placement and subsequent termination. In the "DATE(S) DISCRIMINATION TOOK PLACE" section of her EEOC Charge, the "Earliest" date was noted as "9/14/2022" and the "Latest" date was

---

[7] The email failed to also mention Stephenson's opinion that Plaintiff would not be able to perform her job satisfactorily.
[8] Because Plaintiff has not contested this statement, the Court assumes Plaintiff has not been employed since May 2024.

"10/14/2022." In her EEOC Charge, Plaintiff alleged she was discriminated against because of her age and sex. The alleged facts supporting a discriminatory motivation were Plaintiff "was informed [her] position was replaced by two men, . . . both under the age of 40."

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is granted if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id*.

At summary judgment, the Court considers only admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

## III.    ANALYSIS

Defendant argues summary judgment should be granted for five reasons: (1) Plaintiff failed to exhaust her administrative remedies; (2) Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff; (3) Plaintiff cannot base her discrimination claim on a position to which she did not apply, was not qualified for, and

that was filled after her termination; (4) Plaintiff is not entitled to punitive damages without evidence of actual malice; and (5) Plaintiff failed to mitigate her damages by not seeking employment since separating from her last employer in 2024. (Doc. 52 at 8–9.)

**A. Exhaustion of Administrative Remedies**

Before filing suit under Title VII, "a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002). This exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *Id.* (alteration in original) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). Because the language in EEOC charges must be construed "with utmost liberality," allegations not included in the EEOC charge may nevertheless be considered by a federal court if "the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Id.* at 1100 (first quoting *Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975); and then quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)). In determining whether allegations not specified in the EEOC charge have been exhausted,

> it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*Id.*

In the Ninth Circuit, a plaintiff may also "present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted," but only "[i]f the charge itself is deficient in recording her theory of the case due to the negligence of an agency representative who completes the charge form." *Id.* at 1102; *see also id.* ("Although no explicit admission of agency negligence has been provided in the record, [the Hawai'i Civil

Rights Commission's] declaration suggests that any deficiency in the charge regarding the sparseness of its factual allegations should be attributed to the agency itself rather than to Plaintiff, since the agency itself was on notice of Plaintiff's intent to pursue claims of sexual harassment and intended to provide her with an opportunity to do so.").

Defendant argues Plaintiff failed to exhaust her administrative remedies as to any claim apart from those concerning the Agreement and her subsequent termination, which are the only factual allegations in her EEOC Charge. Plaintiff disagrees, suggesting that the first sentence in her intake questionnaire—"I was continuously harassed and discriminated against due to my gender in a male dominated industry"—was sufficient to exhaust every claim she now asserts. According to Plaintiff, "[t]his single sentence encapsulates the essence of her present complaint against Bray. A reasonable investigation of this sentence would have encompassed all of her claims." (Doc. 60 at 11.)

Plaintiff's argument fails for two reasons. First, there has been no proof or even a suggestion that the EEOC was somehow negligent in failing to include the first sentence of Plaintiff's intake questionnaire alleging she "was continuously harassed and discriminated against due to my gender in a male dominated industry." Plaintiff reviewed, approved, and signed her EEOC Charge prior to its filing; here it is Plaintiff, not the EEOC, who bears the responsibility for "any deficiency in the charge regarding the sparseness of the factual allegations." *B.K.B.*, 276 F.3d at 1102.

Second, and more importantly, even if the EEOC had included the conclusory statement in the EEOC Charge, it would be insufficient to exhaust every claim Plaintiff now attempts to bring in this litigation. The statement that Plaintiff "was continuously harassed and discriminated against due to my gender in a male dominated industry" lacks any specific factual allegations whatsoever. There are no allegations regarding "dates," "perpetrators," "locations," and the like. *Id.* at 1100. Plaintiff suggests her unspecified claims, even if not actually investigated by the EEOC, fall within the scope of a "reasonably thorough investigation" of this statement in her intake questionnaire. *Gibbs v. Pierce Cnty. L. Enf't Support Agency, City of Tacoma*, 785 F.2d 1396, 1400 (9th Cir. 1986). But it is

common sense that without any specific allegations, the EEOC could not reasonably be expected to scour or comb through Plaintiff's entire employment history with Defendant to unearth every incident of harassment, failure to hire, or other discrimination prior to the alleged events leading up to Plaintiff's termination. It is not conceivable that any unstated claims could be reasonably related to this statement. Thus, Plaintiff's claims of harassment, failure to hire, and discrimination regarding events outside the scope of her EEOC charge and prior to September 14, 2022, are dismissed for failure to exhaust her administrative remedies.[9]

Construing Plaintiff's EEOC Charge liberally, she has also failed to exhaust administrative remedies as to any claim of retaliation regarding the Agreement and her subsequent termination. Under Title VII, an employer cannot retaliate against an employee for engaging in protected activity; that is, for "oppos[ing] . . . an unlawful employment practice." 42 U.S.C. § 2000e-2(a)(1). Certainly, the dates, perpetrators, and locations of Plaintiff's discrimination allegations in the EEOC Charge overlap to some extent with her claim that the Agreement and termination were in retaliation for complaining of discrimination regarding her inability to apply for the Regional Manager position.[10] But it is undisputed that the EEOC charge contains no mention of retaliation, and there are no factual allegations in the EEOC charge suggesting that Plaintiff engaged in any protected activity prior to the Agreement and subsequent termination. *See, e.g.*, *Pripilitsky v. Corp. Serv. Co.*, No. CV-10-2222-PHX-GMS, 2011 WL 1884798, at *4 (D. Ariz. May 18, 2011) ("[T]he facts presented in the charge would not have put Defendant on notice of a Title VII claim because they would not have suggested that Plaintiff was engaged in protected activity under Title VII."); *Enriquez v. City of Scottsdale*, No. CV-19-04382-PHX-SMB, 2022 WL 1773829, at *10 (D. Ariz. June 1, 2022) (noting the plaintiff "neither mentioned retaliation in the narrative portion of the EEOC charge, nor did she check the retaliation

[9] Admissible evidence underlying unexhausted claims might still be relevant regarding discriminatory intent and credibility in support of Plaintiff's sex discrimination claim concerning the Agreement and subsequent termination, which survives summary judgment.
[10] Plaintiff's testimony regarding this Regional Manager position is discussed *infra*.

box," so in the absence of "some sort of allegation of retaliation in her EEOC Charge or Intake Questionnaire, such an allegation is not reasonably expected to grow out of the charge of discrimination" (quoting *Zhang v. Honeywell Int'l Inc.*, No. 06-1181-PHX-MHM, 2007 WL 2220490, at *3 (D. Ariz. Aug. 1, 2007))).

Because the EEOC Charge, and moreover the intake questionnaire, do not contain a single allegation suggesting Plaintiff engaged in protected activity, and there is no reference to retaliation, neither the EEOC Charge nor intake questionnaire "describe the facts and legal theory with sufficient clarity to notify the agency that [retaliation] is claimed." *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981); *see Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) ("[I]t is well established that retaliation claims are not reasonably related to underlying discrimination claims."); *see also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge."). As such, Plaintiff's claim of retaliation is dismissed for failure to exhaust her administrative remedies.

### B. Age Discrimination

Defendant moved for summary judgment on Plaintiff's claim of age discrimination, and Plaintiff failed to address this claim in her Response. Plaintiff's failure to address the age discrimination claim "may be deemed a consent to the . . . granting of the motion" on this issue, LRCiv 7.2(i), and serves as Plaintiff abandoning the claim, *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (affirming summary judgment on a claim because the plaintiff "abandoned th[e] claim by failing to raise it in opposition to the [defendant's] motion for complete summary judgment"). Accordingly, the Court will grant summary judgment and dismiss Plaintiff's claim for age discrimination.

### C. Sex Discrimination

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to

fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on account of the employee's sex. 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a sex discrimination claim, a plaintiff must "create a triable issue of fact regarding discriminatory intent." *Alozie v. Ariz. Bd. of Regents*, 431 F. Supp. 3d 1100, 1111 (D. Ariz. 2020) (quoting *Habib v. Matson Navigation Co.*, 694 F. App'x 499, 500–01 (9th Cir. 2017)). To meet this burden, a plaintiff may produce "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the adverse action; alternatively, a plaintiff may rely on the *McDonnell Douglas* burden-shifting framework to raise a rebuttable presumption of discrimination.[11] *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013).

To establish a prima facie case under *McDonnell Douglas*, Plaintiff must show: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802)). "If the employer does so, [Plaintiff] must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1124 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

As to Plaintiff's claim of sex discrimination regarding Defendant requiring her to sign the Agreement and then terminating her, Defendant does not dispute that Plaintiff has

---

[11] Assuming Plaintiff does not rely on *McDonnell Douglas* to raise an inference of discrimination, Defendant has proffered a legitimate, nondiscriminatory motivation, so the *McDonnell Douglas* framework is appropriate for analysis: "Under either approach, [Plaintiff] must produce some evidence suggesting" an adverse employment action "was due in part or whole to discriminatory intent." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

met her prima facie burden.[12] Instead, Defendant argues Plaintiff cannot meet her burden to establish pretext in response to Defendant's legitimate, nondiscriminatory reasons for the Agreement and termination—namely, that (1) "Defendant received multiple customer complaints about her performance," (2) "Plaintiff missed scheduled meetings," (3) "Plaintiff had multiple emotional breakdowns with her direct supervisor, Webster," (4) "the third-party EAP provider informed Bray that Plaintiff had not met program directives," and (5) "Plaintiff did not secure financial counseling." (Doc. 64 at 5–6.)

Because Defendant proffered a legitimate, nondiscriminatory reason for requiring Plaintiff to enter into the Agreement and terminating her, the burden shifts to Plaintiff to create a triable issue of pretext. To do so, Plaintiff "must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang*, 225 F.3d at 1124 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

Here, Plaintiff has met this burden both directly and indirectly. First, the alleged circumstances leading up to the Agreement and termination is sufficient direct proof for

---

[12] Defendant argues only that Plaintiff failed to make a prima facie showing as to her failure-to-hire claim, not her discrimination claim regarding the Agreement and termination. (*See* Doc. 52 at 14–15.) Considering the proffered admissible evidence, Plaintiff likely meets the prima facie burden to establish she was terminated on account of her sex. In particular, there is sufficient evidence that Defendant's discriminatory conduct is related to complaints about Plaintiff's work performance because Plaintiff, in contrast to her male peers, was allegedly required to generate her own product quotes and pricing sheets for clients. Plaintiff will testify about a 2018 conservation with Mark Brown, the cousin of Bray's owner and Plaintiff's boss from 2018 to 2021. In this conversation, Plaintiff allegedly complained about being the only outside sales representative required to produce their own product quotes and pricing sheets for customers and asked whether two recently hired inside sales representatives would be assisting with her quotes and pricing sheets. In response, Mark Brown allegedly told her she would not receive any such assistance because "doing quotes is women's work." Under Fed. R. Evid. 801(d)(2), Brown's statements to Plaintiff are admissible nonhearsay as an opposing party's statement attributable to Defendant. Perhaps, as Defendant argues, Plaintiff's testimony is contradictory and she lacks sufficient personal knowledge whether every similarly situated male received or didn't receive assistance with their quotes and pricing sheets. (Doc. 64 at 2–3.) But Defendant's argument goes to the weight, not admissibility, of Plaintiff's testimony. What is more, Plaintiff does have personal knowledge of her conservation with Mark Brown where he insisted she produce her own quotes and pricing sheets because she is a woman, which allegedly inhibited her capacity to promptly provide this information to clients upon request.

Plaintiff's argument that a discriminatory reason more likely than not motivated Defendant. Plaintiff proffers her testimony that in December 2021, she approached Webster about applying for a new Regional Manager Position, and allegedly Webster repeatedly told Plaintiff that Jonathan Hill, Defendant's Global Product Manager, said he was "not going to hire a woman for that position." (CSOF ¶ 26.) Plaintiff will testify she boldly responded to Webster that refusing to consider her for this reason would be "illegal discrimination." (*Id.* ¶ 52.) In August 2022, the month before she was fired, Plaintiff nevertheless attempted to apply for the position online; when she was unable to log-in for this purpose, she notified Webster, who allegedly responded that they had "talked about this" and "panicked," informing her he "needed to call somebody." (*Id.* ¶ 26) Plaintiff will testify that only after this conversation did Webster complain about Plaintiff's job performance to Bray's Human Resources Department. Plaintiff argues the timing is significant because Webster had allegedly received client complaints much earlier, since January 2022, without any discipline until September when she was required to enter into the Agreement. (*Id.*) Whether Webster actually shared Hill's alleged discriminatory animus, and the extent of Webster's role in the Agreement and subsequent termination, are fact questions to be determined by the jury. *Cf. Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 807 (9th Cir. 2009) ("The facts before us here show a workplace in which the initial report of possible employee misconduct came from a presumably biased supervisor, but whose subsequent involvement in the disciplinary process was so minimal as to negate any inference that the investigation and final termination decision were made other than independently and without bias.").

Second, Plaintiff offers indirect evidence that Defendant's proffered explanation for terminating Plaintiff is not credible. Defendant claims the Agreement expressly or clearly required Plaintiff to complete the seven tasks by October 5, 2022, but this conclusion is not corroborated by independent evidence, and Plaintiff disputes she was told and understood all seven tasks must be completed by this deadline. Not only is this deadline not expressly

set forth in the Agreement,[13] but most of the requirements could arguably be interpreted as continuing obligations after Plaintiff's return from her three-week leave, including "[m]aintain[ing] regular attendance," "perform[ing] job duties in a satisfactory manner," and "follow[ing] case management for 1 year." (Doc. 65-7 at 2.) Whether there was a specific deadline for completion is a jury issue.

Plaintiff also reasonably disputes whether she failed to meet the counseling requirements, supported by case notes from Health Advocate, the EAP provider, indicating Plaintiff did seek and obtain financial counseling from MSA Financial. However, this was to no avail because MSA Financial ultimately transferred her back to Health Advocate after finding they could not assist Plaintiff with her particular issues "because it was determined . . . it was a legal issue, no[t] financial—once a home is lost there is nothing financial can do [and she] needs to go to legal." (Doc. 65-13 at 2.) As for her mental health counseling sessions, Plaintiff can reasonably dispute whether she was required to have two sessions with the same mental health counselor, because the record does not expressly set forth this requirement. Also, Plaintiff will testify, after having issues with her first counselor who allegedly failed to show up for the first appointment, Health Advocate specifically instructed Plaintiff to schedule an appointment with a second counselor. However, Plaintiff says she was unable to schedule the appointment any earlier than October 17, 2022, given the counselor's unavailability. Although this date was after Defendant's purported deadline extension of October 14, Plaintiff will testify she informed Defendant of the problem with compliance with this date.

Finally, if Defendant claims Plaintiff was terminated because of her unsatisfactory job performance, and not because she failed to complete her counseling requirements by October 5, 2022, this is a disputed factual issue to be resolved by the jury. Defendant has not proffered indisputable evidence that Plaintiff's job performance was somehow worse on October 14, 2022, than it was on September 14, 2022, when she was mandated by Defendant to enter into the Agreement, rather than immediate termination on the spot.

_____

[13] The Agreement only states that the three-week period from September 15, 2022, to October 5, 2022, was for Plaintiff to "get [her] affairs in order." (Doc. 65-7 at 2.)

- 13 -

Whitney Stephenson concluded, without explanation, that Plaintiff's job performance would not improve after October 14, 2022, but whether this opinion is credible is a question of fact for the jury.

### D. Punitive Damages

Defendant also moves for summary judgment on Plaintiff's claim for punitive damages. Under Title VII, punitive damages may be awarded "if the complaining party demonstrates the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) ("[I]n the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) ("Punitive damages may not be awarded, however, where a defendant's discriminatory conduct is merely 'negligent in respect to the existence of a federally protected right.'" (quoting *Hernandez-Tirado v. Artau*, 874 F.2d 866, 870 (1st Cir. 1989))).

Defendant argues "there is not an iota of evidence that Defendant acted with malice or reckless indifference" and that it "acted for legitimate business [reasons], even if Plaintiff contends that its actions were somehow wrongful." (Doc. 52 at 16.) In response, Plaintiff contends that there is sufficient evidence—particularly Webster's sexist statements and subsequent complaint about Plaintiff's work performance—from which "a reasonable jury could easily conclude that [Defendant] recklessly or (more likely) intentionally disregarded [Plaintiff's] federally protected rights." (Doc. 60 at 18.)

There is sufficient proffered admissible evidence to deny Defendant's summary judgment motion on punitive damages, without prejudice at the trial.

### E. Mitigation of Damages

Lastly, Defendant moves for summary judgment on the issue of backpay damages because Plaintiff failed to mitigate her damages. (Doc. 52 at 16.) Failure to mitigate damages is an affirmative defense for which Defendant bears the burden of proving: "(1)

there were suitable positions available for [Plaintiff]; and (2) she failed to use reasonable care and diligence in seeking out those positions." *EEOC v. High Speed Enter., Inc.*, 833 F. Supp. 2d 1153, 1161–62 (D. Ariz. 2011) (first citing *Jackson v. Shell Oil*, 702 F.2d 197, 202 (9th Cir.1983); and then citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir.1994)).

Defendant notes that "other than a period of post-termination employment with Palo Verde [Industrial Supply] from February 6, 2023, until May 2024, Plaintiff admitted in her verified discovery responses that she has not been employed by any other employer and that she has not attempted to find other employment." (*Id.* at 16–17.) Later in her deposition, Plaintiff "claimed she had apparently applied for other positions, but that she chose not to disclose this information in her discovery responses," (*id.* at 17), asserting: "I'm a little hesitant to let Bray know where I'm applying, because they've done many crooked things," (SOF ¶ 64).

Plaintiff's response to the legitimate discovery request is wholly improper and does not foreclose granting summary judgment on the issue of mitigated damages. She admits in her Controverting Statement of Facts she has not applied for any jobs since May 2024, and she does not offer evidence that there were no suitable positions available. However, Defendant has the burden of proof on summary judgment to establish Plaintiff's failure to mitigate, specifically that there were suitable positions for Plaintiff. Because Defendant has not met this burden, the Motion will be denied on this issue.

### IV. CONCLUSION

Based on the foregoing, the Court will deny in part Defendant's Motion for Summary Judgment as to Plaintiff's claim of sex discrimination regarding the Agreement and termination, her request for punitive damages, and Defendant's mitigation of damages defense. As for Plaintiff's claims of retaliation, harassment, failure to hire, age discrimination, and sex discrimination based on alleged adverse actions prior to September 14, 2022, the Court will grant Defendant's request for summary judgment.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Plaintiff's claims of retaliation, harassment, failure to hire, and age discrimination are **DISMISSED**.
- Defendant's requests for summary judgment on Defendant's mitigation of damages defense and on Plaintiff's claim for punitive damages are **DENIED**.
- Plaintiff may proceed to trial on her claim of sex discrimination regarding the alleged adverse actions occurring between September 14, 2022, and October 14, 2022.

Dated this 30th day of July, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge